McGehee v. Powell.

# REPORTS

OF

## CASES ARGUED AND DETERMINED,

## JANUARY TERM, 1846.

## McGEHEE v. POWELL.

1. Notes made by a trading company, and for which the plaintiff's intestate might have been liable as a partner, are not admissible to the jury under the pleas of non-assumpsit, want of, or failure of consideration.
2. There can, under the statute, be no limited partnership for the purpose of banking, or making insurance, and an association formed in 1838, for the

purpose of issuing bills to circulate as money, was not prohibited by the statute from doing the act. The only consequence resulting from the act is to make all the partners alike responsible.

3. Although the issuance of bills of a less denomination than three dollars was prohibited, at the time when a contract for the loan of the bills of an unchartered association was made, yet the mere fact that bills for less than three dollars were received, does not avoid the contract.

4. When the defendant borrowed bills from an unchartered association, which he endeavored to show originated in a conspiracy to cheat the public by getting its bills in circulation without the means or the intention to redeem them, his request for the Court to instruct the jury, that if he was a party to the conspiracy, by engaging to aid in the circulation of the bills, this would avoid the contract under which the bills were borrowed, will be considered as merely abstract, and therefore properly refused, when there is no evidence before the jury to connect him with the conspiracy.

Writ of error to the Circuit Court of Benton.

Assumpsit by Powell, as the administrator of Isaac Lyon, against McGehee. The declaration contains four counts to the following effect, to wit: the first is against him, as the maker of a note for $1,000, dated 19th November, 1838, payable to Lyon or order, four months after date, negotiable and payable at the office of the Wetumpka Trading Company. The only averment in this count is, that the time of payment has passed. The second describes the same as payable in notes of the Wetumpka Trading Company, or State Bank notes, and contains the averment that the defendant failed to pay according to either condition, at the maturity of the note. There is the further averment that the notes of the State Bank, and notes of the Wetumpka Trading Company, to the sum of $1,000 with interest, were worth, at the maturity of the note, $1,026 66, and the count concludes with a *super se assumpsit* for that sum. The third count is unnecessary to be stated, as the plaintiff entered a *nolle proseque* on that previous to the trial. The fourth was demurred to and the demurrer sustained, therefore its statement here is also unnecessary. The fifth is a general one, including all the common counts for $1,026 66, due from the defendant to the plaintiff's intestate.

The defendant demurred to each count severally, and upon his demurrers being overruled to those which are above set out in

McGehee v. Powell.

substance, then pleaded—1. Non-assumpsit. 2. That he executed a certain note, which he sets out in his plea, and which is the same as that described in the second count of the declaration, and then avers that the note is the only one he ever executed to Lyon in any character whatever. He further avers that this note was executed to Lyon in consideration alone of the notes of a company of individuals, to wit : the said Lyon, Erastus B. Smith, John D. Champlin, who were the general partners of the said company, and Thomas E. Stone, Erastus S. Smith, Edmund Lyon, and Henry Morgan, who were special partners ; the said company calling themselves and commonly known as the Wetumpka Trading Company, alias, the Wetumpka Trading Company of the State of Alabama. He further averred, that the notes of said company were negotiated and delivered to him by the said Lyon, as the President of the said Company, with the intention that the same should circulate as money, and the same were then so emitted to the defendant, in the State of Alabama. He further avers, that his note was executed to Lyon as the President of the Company, and not to him in his individual character, nor for his individual benefit. 3. Tender of the full sum in the notes of the Wetumpka Trading Company. 4. The failure of consideration. 5. Want of consideration. 6. Payment into Court of the amount in notes of the Wetumpka Trading Company. The second plea was verified by affidavit, and all the others are pleaded in short, that is, by stating the names only of the pleas. The Court sustained a demurrer to the second plea, and struck out the pleas of tender and payment into Court.

At the trial, on issues formed on the other pleas, the plaintiff produced and read in evidence, the note described in his second count, and showed the value of Alabama Bank notes was two per cent. less than specie, at the maturity of the note of the defendant. He also proved that a small amount of the bills of the Wetumpka Trading Company were passed off in payment for goods at about 10 per cent. higher than the same goods could have been purchased for other money, and this took place between the 1st February and the 1st March, 1839.

The defendant then offered evidence, the substance of which may be thus stated, to wit :

The note of the defendant was made in consideration of $1,000 in bills of the Wetumpka Trading Company, loaned to him by

the plaintiff's intestate, acting for and in behalf of the company, for the purpose, and with the intention on the part of Lyon, to emit the bills for circulation as money, within this State. The company went into operation in September, 1838, and transacted what is usually termed banking business, that is, they loaned their own bills, discounted drafts, purchased cotton and emitted engraved promissory notes or bills for circulation as money. During the months of November and December, 1838, the company redeemed their bills with specie, and then circulated as well as specie for a short time, but sometime about the last of February, or 1st of March, 1839, the bills having ceased to circulate, a committee was appointed to examine the affairs of the company, which committee reported favorably. The report produced no effect, and soon afterwards the company failed, and Smith, the Cashier runaway, who was followed, some three or four weeks afterwards by Lyon, the President, leaving a large amount of the bills of the company in circulation, without any effects of the company to meet them. The tendency of the evidence was to show that the loan to the defendant was made for him to put the bills of the company in circulation in the up country, and other persons were induced to borrow bills to effect the same object. At the time the defendant's note fell due, the notes of the company were valueless.

The company was an unchartered association of individuals, pretending to have formed a limited co-partnership. The articles of partnership, in the form of a certificate signed by the three general partners, was placed on record in the clerk's office of the County Court of Coosa county, and ordered by the Judge to be published in the Wetumpka Argus. The articles recite, that the partnership consists of Isaac Lyon, John D. Champlin, and Erastus B. Smith, as general partners; and Thomas E. Stone, Erastus E. Smith, Edmund Lyon, and Henry Morgan, as special partners; that each of the special partners put in $25,000 to the common stock, and that the general partners had pledged to trustees real estate valued at $100,000, which was to be kept for the purpose of saving harmless the special partners and the public. The general partners, Lyon and Champlin, are described as residents of Wetumpka, Erastus B. Smith as late of New York, Thomas E. Stone of Georgia, Erastus T. Smith of Massachuseets, and the other special partners of New York. The bus-

iness to be conducted under the name of the Wetumpka Trading Company, and it was to be confined strictly to that which was mercantile, and such acts and things as would enable it to carry on the mercantile business, in all its branches and forms. The company was also to buy, improve and sell real estate to a limited extent, but in no instance for speculation. All the debts and transactions of the company, were to be in writing, signed by Lyon as President, and countersigned by Erastus B. Smith. It was not to contract debts by any other kind of promissory notes than those of the denomination of 3, 4, 5, 10, 20, 50, 100, 500, and 1,000 dollars, except at the earnest solicitation of their creditors, it may be of public utility to contract debts and give their notes for less amounts ; but not then in any case after the banks of the State shall resume specie payments. The partnership was to commence the 1st September 1838, and end on the 25th of December, 1850. Other stipulations are contained in the articles, but these are all which bear upon the questions raised. On the 29th of August, 1838, the then general partners subscribed an affidavit, made before the Judge of the County Court of Coosa county, in which they swear that the special partners had paid into the common stock the amount contributed by each, and specified in the certificate, (i. e. the articles )

A short time before Lyon absconded he was heard to state, and confess, that the company was a swindling operation, which he then could not help. Neither of the general partners have been back since they ranaway, and the special partners are unknown to the witnesses examined.

It was also in evidence that the present plaintiff had said he had no interest in this suit, nor any title or claim whatever, nor was he aware of any, either in his own right, or as administrator of Lyon in Benton county; that he had directed no such suit, nor was the note sued on ever in his possession. In a subsequent conversation, he reiterated the same statement, but then added that he understood he had been appointed administrator, to enable a person then named to bring suits for his own benefit, or for that of some other person.

The defendant then proved the execution of —— hundred dollars in amount of the notes of the said company, each signed by Lyon as President, and offered each note under the several pleas; the notes so offered in evidence were of all denominations, from

$3 to $50, and were payable to W. W. Mason, or bearer, on demand, at the office of the Wetumpka Trading Company. On motion of the plaintiff, these bills were rejected.

On this evidence, the Court charged the jury, that if the defendant was in Wetumpka at the time the note sued on fell due, and then tendered the full amount, in either Alabama bank notes or in notes of the Wetumpka Trading Company, or if the defendant was prevented by any act of the plaintiff from making such tender, then, in either event, the note was discharged.

The defendant then asked, and the Court refused, the following charges, to wit:

1. That if the jury believe all the evidence to be true, they ought to find for the defendant.

2. If the payee of the note sued on, with others, associated themselves under the name of the Wetumpka Trading Company, and entered into the articles read to the jury, and issued the notes of said company for circulation as money, and kept a banking house, and discounted notes for persons who would borrow the notes of the company, and that Lyon was President of the Company, and that the note sued on was given to him for the notes of the company loaned to the defendant, at the date of the note, and issued to him by Lyon, to be put in circulation as money, then the jury ought to find for the defendant.

3. That if the note sued on was given for the notes of the Wetumpka trading Co. loaned to the defendant by an officer of the company, with the intention on the part of the lender, that said notes should circulate as money, then the jury ought to find for the defendant.

4. That if the note was executed to the President of the company, and that the same was the property of the company, and not the property of Lyon, and if the plaintiff, since the commencement of this suit, had said he had no interest in the same, nor did he know the suit was pending, and if the defendant has just demands against the company, and that the note never was in the hands of the plaintiff, or reported as assets of the estate of Lyon, then the jury ought to find for the defendant.

5. That if the note was executed to the President of the company, and that it was an unchartered banking company, and that the note was given in consideration of notes of the company, which were to be put in circulation as money, in this State, then

the contract is void, and the jury ought to find for the defendant.

6. If Lyon, the plaintiff's intestate, with others, formed an association for the purpose of banking, and issued notes for circulation as money, under the name of the Wetumpka Trading Co., knowing at the time they formed such association, they had not the means to redeem their notes, put in circulation, and designing to defraud the community, by issuing paper for circulation as money, putting it in circulation and then not redeeming it, then that a note given to the company, or to its President, with the intention on the part of the maker, and payee, to promote their circulation as money, such note would be void, and could not be collected in a Court of Law.

The defendant excepted to the charge given by the Court, as well as its refusal to give those requested by him. He now assigns as error—

1. That the Court erred in overruling his demurrers to such counts of the declaration as were held good.

2. In sustaining the demurrer to the second plea.

3. In excluding the notes of the Company as evidence.

4. In the several refusals to charge as requested, and in the charge as given.

T. A. WALKER, S. F. RICE, and H. P. DOUTHITT, for the plaintiff in error, insisted—

1. That the plea overruled presented a sufficient defence to the action, as it was the defendant's right to show the note sued on was the property of a third person, against whom existed a set off. [9 Porter. 309 ; 8 Ib. 523 ; 5 Ala. Rep. 135.]

2. If the facts in evidence constituted a defence, it was error to refuse the charge asked in this connection. [6 Ala. Rep. 753.]

3. The association making the contract was a limited partnership, and such are expressly restrained from banking, by the act which warrants them to be formed. [Dig. 389, § 1.] Independent of this, as banking is a franchise, the contract is void under the constitution. All contracts in violation of positive law, are void. [5 Ala. Rep. 257 ; 7 Paige, 653 ; 8 Ohio, 286.]

4. The interest in the contract sued on being disclaimed by

the plaintiff on the record, the action could not be maintained. [Moore v. Penn, 5 Ala. Rep. 135.]

5. It is impossible, at this day, to say that the refusal to give the charge last requested is not error. All contracts contrary to public policy are void. [1 Ala. Rep. 34; 6 Ib. 20; Chitty on Con. 519; 2 Stew. 175; 1 P. Wms. 181; 5 John. 327; 17 Mass. 258; 3 Wheat. 204; 2 Burr. 924; 6 Mass. 261; 5 Ib. 386; 3 Hall, 55; 11 Wheat. 58; 11 S. & R. 164; 6 Term, 61.]

6. The notes of the company were admissible, in connection with the other evidence, to show the indebtedness and insolvency of the company. The insolvency of the company would defeat the action, if the note sued on belonged to them at any time. [Clay's Dig. 391, §§ 14, 15, 21, 23.]

A. F. HOPKINS, W. P. CHILTON, and F. W. BOWDON, contra, argued—

1. That no serious question arises upon the declaration.

2. As to the main question arising on the second plea, and the evidence, the statute regulating limited partnerships, cannot affect this case, because the company here was not organized under that act. The addition of company cannot be used. Not being a limited partnership, all the partners are bound as general partners, and there is no pretence to say that such a firm was not allowed to bank, when banking was not prohibited. [Br. Bank v. Crocheron, 5 Ala. Rep. 256; Nance v. Hemphill, 1 Ala. Rep. 558.]

3. But if the company was a limited partnership, there is nothing in the act which prohibits them to bank; the proviso is the mere exclusion of the grant of such authority to those kinds of partnerships.

4. The notes offered in evidence were *prima facie* irrelevant, there being no plea of tender or set off.

5. The last charge asked for was entirely abstract, as there was no evidence to sustain it.

6. The fourth charge had no issue to sustain it, and therefore was properly refused. [Bryant v. Owen, 1 Por. 201; 9 Porter, 309; 5 Ala. Rep. 135.]

GOLDTHWAITE, J.—1. Before entering upon the consideration of the questions we intend to decide in this case, we think

McGehee v. Powell.

proper to remark, that no serious objection is stated to the counts of the declaration upon which the cause went to the jury; nor has any particular stress been laid on the exclusion from the jury of the notes of the Trading Company offered in evidence. The only plea on which, if at all, these were admissible, had previously been stricken out, and the indebtedness and insolvency of the company were entirely immaterial facts, in the manner in which the suit was defended.

2. Nor is it material to notice the decision upon the demurrer to the second plea, as the same defence was proper, if available at all, under the general issue, and the proof is more explicit of the facts upon which the defence is supposed to arise. The argument assumed by the defendant is, that at the time of this contract, one of the contracting parties was a limited partnership, and as such, was inhibited from emitting notes for circulation as money. The act of 1837, first authorized the formation of limited partnerships, but at the same time declared that nothing in it should be so construed as to authorize any such partnership for the purpose of banking or making insurance. [Dig. 389, § 1.] When this statute was passed, there was no restrictive act in force to prevent individuals, or associations of individuals, from transacting banking business; and there is nothing in our State constitution which takes away their common law right. [Nance v. Hemphill, 1 Ala. Rep. N. S. 551.] Certainly there is nothing in the terms of the enactment to warrant the inference that the intention of the legislature was to restrict such partnerships only. On the contrary, it seems to have been intended, that as to insurance and banking, no limited partnership should be allowed; but that, in this description of business, all the partners should be responsible, as in cases of other partnerships. We dismiss then, all consideration of the supposed defects in complying with the requisitions of the statute regulating limited partnerships, as our opinion is, that if all had been complied with, no other than a general partnership could exist as to this kind of business. It then comes to no more than this—the association, though formed as a limited partnership, has, by the articles bringing them together, contracted to carry on a business which could then be done by general partners only, and the consequence is, all are liable as such. Beyond this, the decision cited shows, that at the time of

the contract, bills might be lawfully issued for circulation as money, by a general partnership.

This conclusion necessarily sustains the refusal by the Court, of the charges growing out of the supposed construction of the act regulating limited partnerships.

3. It is urged however, that the jury might properly have inferred, the contract was with relation to bills of three dollars; the circulation of which was restrained at the time of the contract. We are not prepared to say that the proof before the jury was such as to warrant this conclusion; certainly, however, it was not one which they were constrained to infer, and in the absence of any specific request for a charge upon this point of the case, there was no error in refusing to instruct the jury, that their verdict ought to be for the defendant. In the case of the Bank at Montgomery v. Crocheron, [5 Ala. Rep. 256,] a similar question was presented, and we then held, that the receipt of bills of this denomination, or less, under a general contract to receive and circulate as money the bills of a corporation, did not render the contract void *per se*, and that the question of intention was proper to be left to the jury. Our final conclusion is in entire accordance with that decision.

4. It remains only to consider whether the last charge should have been given. We do not understand the counsel for the plaintiff as denying the correctness of this proposition, as a matter of law, but as insisting, that applied to the facts of this case, it was merely abstract, as there was no evidence that the defendant entered into the conspiracy of the general partners, if indeed there was any such, to defraud the public. Undoubtedly the proposition is correct, and well sustained by adjudged cases in our Courts, and elsewhere. [Bank v. Crocheron, 5 Ala. Rep. 256; Boyd v. Barclay, 1 Id. 34; McGehee v. Lindsay, 6 Ib., 16, and cases there cited.] But in the present case, we are constrained to say, that the evidence will not sustain the party in his attempt to stultify himself. There is no evidence to connect him with the attempt to defraud the public, even if it was conceded there is sufficient to implicate the partners in the trading company. The merely contracting for the loan of bills with a company, which at the time had credit, and the making arrangements for a loan to another person, is not sufficient to identify the defendant with the conspiracy, if there was one in the first instance,

Indeed, it would seem, if he was aiding and abetting in this object, he was engaged at a very low compensation, or that the confederates dealt with little liberality to each other.

It is useless to speculate, however, upon such points, as our opinion is clear, there is no evidence to connect the defendant with the intention to cheat the public, and therefore the request of his counsel, in this connexion, was properly refused.

We arrive at the conclusion that the judgment of the Circuit Court should be affirmed ; and in this we are not aware that injury to the defendant can be the result. If, at the commencement of this suit he was the *bona fide* holder of the bills of the company, it is conceived the recent decision of Lyon v. Moore and Chandler, will indicate his proper remedy ; but if he has speculated on the bills, upon his chance of a verdict, he is entitled to no relief here or elsewhere.

Judgment affirmed.